THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARIA J. MORALES,<br><br>              Plaintiff,<br><br>    v.<br><br>SONYA FRY, *et al.*,<br><br>              Defendants. | CASE NO. C12-2235-JCC<br><br>ORDER DENYING DEFENDANTS' RENEWED MOTION FOR JUDGEMENT AS A MATTER OF LAW |

      This matter comes before the Court on Defendants' Renewed Motion for Judgment as a Matter of Law (Dkt. No. 123). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the Motion for the reasons explained herein.

**I.    BACKGROUND**

      This case arises from Plaintiff Maria Morales' arrest during the May 1, 2012 protests in downtown Seattle, Washington. In their efforts to control the crowd in what had become a tense situation, Seattle Police Department officers instructed the protesters to move in various directions. (Trial Transcript, Day 1, Dkt. No. 118 at 82.) Plaintiff Maria Morales, who was present in the protest area, attempted to comply with these instructions. In doing so, she was forced to pass along a bike perimeter that had been created by several officers to shield an

ongoing arrest. (*Id.* at 81-82.) The way was narrow and Plaintiff testified that she needed to turn Officer Sonya Fry's protruding bicycle handlebar to the side to create room for her to pass. (*Id.*) In doing so, it appears that Plaintiff caused another part of Officer Fry's bicycle to come into contact with Officer Fry's chest. (*Id.* at 130-35.) Simultaneously, Officer Fry testified she perceived what felt like a punch to her chest. (*Id.* at 171.) Seeing only Plaintiff nearby, Officer Fry yanked Ms. Morales headlong over her bike, causing her to fall on her back on top of other bikes. (*Id.* at 82.) Three or four officers converged upon Ms. Morales after she hit the ground, turning her on her face, climbing on top of her back, stepping on her leg and pressing their knees into her neck. (*Id.* at 82-83; Trial Transcript, Day 2, Dkt. No. 119 at 100-29, 143.) Spotting this struggle, after several officers had already piled on the five-foot-tall, 100-pound Ms. Morales, Officer Brian Rees walked over and discharged his pepper spray in Ms. Morales' eyes for approximately one quarter of a second. (Trial Transcript, Day 2, Dkt. No. 119 at 143-47; Defendants' Renewed Motion, Dkt. No. 123 at 7.) Plaintiff was subsequently handcuffed, arrested, and charged with assault for the blow that Officer Fry had perceived. (Trial Transcript, Day 1, Dkt. No. 118 at 83-117.) These charges were later dismissed. (*Id.* at 117.) Ms. Morales brought the present suit against several of the involved officers and the City of Seattle, making, *inter alia*, several 28 U.S.C. § 1983 claims alleging violations of her Fourth Amendment rights. (Complaint, Dkt. No. 1 at 1-2.)

   This Court presided over a five-day jury trial. The jury found for Plaintiff on her Section 1983 claim against Officer Brian Rees for excessive use of force, based on his intentional deployment of the pepper spray. (Trial Transcript, Day 5, Dkt. No. 122 at 5-6.) The jury did not find for Ms. Morales on any other of her Section 1983 claims. (*Id.*) The jury found that Ms. Morales was not entitled to compensatory damages for her successful claim against Officer Rees.

ORDER DENYING DEFENDANTS' RENEWED
MOTION FOR JUDGEMENT AS A MATTER OF
LAW
PAGE - 2

(*Id.* at 6.) After trial, the parties stipulated and this Court ordered that Ms. Morales be awarded one dollar in nominal damages, due to the requirements provided in *Floyd v. Laws*, 929 F.2d 1390 (9th Cir. 1991). (Stipulation and Proposed Order Post-Verdict, Dkt. No. 116.)

## II.     DISCUSSION

Defendants' Renewed Motion for Judgment as a Matter of Law implicates three separate, albeit unoriginally worded, standards governing judgment as a matter of law, qualified immunity, and excessive use of force. In condensed form, the question presented to the Court by Defendants' Renewed Motion is whether a reasonable jury could have found (judgment as a matter of law standard) that every reasonable officer would have found (qualified immunity standard) it unreasonable (excessive use of force standard) to pepper spray Plaintiff during her arrest. The Court answers this question in the affirmative, for the reasons discussed below.

### A.     Judgment as a Matter of Law Standard

After the jury has entered its verdict, judgment as a matter of law may be granted only if the Court finds that *no reasonable jury* could have produced that verdict, even viewing the evidence and drawing all inferences in a manner most favorable to the prevailing party.

Judgment as a matter of law is "appropriate when the evidence presented at trail permits only one reasonable conclusion." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1205 (9th Cir. 2008). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250-51 (1986). A party who moved for judgment as a matter of law during trial may renew his request for judgment as a matter of law after entry of judgment. Fed. R. Civ. P. 50(b). After trial, a renewed motion may be granted only if the evidence, "permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Josephs v. Pacific Bell*, 443 F.3d 1050, 1062 (9th Cir. 2005). On motion for judgment as a matter of law, the "evidence must be viewed in the light most favorable

Case 2:12-cv-02235-JCC   Document 132   Filed 10/03/14   Page 4 of 14

to the nonmoving party, and all reasonable inferences must be drawn in favor of that party." *LaLonde v. County of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000). *See also Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 149-50 (2000).

### B. Qualified Immunity Standard

Government officials acting under color of law are shielded from civil liability for constitutional violations unless every reasonable official in the defendant official's position would have recognized the conduct in question to constitute a constitutional violation.

Qualified immunity shields government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A right is clearly established if the "contours of the right [are] sufficiently clear that a [every] reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). *See also Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011).

### C. Excessive Use of Force Standard

Officers violate a suspect's Fourth Amendment right to be free from unreasonable seizure when the force deployed in arresting the suspect is excessive. Force is excessive when it is objectively unreasonable given the totality of the circumstances. *See Graham v. Connor*, 490 U.S. 386, 393-96 (1989). There is no "single generic standard" by which excessive force may be determined; "determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the

ORDER DENYING DEFENDANTS' RENEWED
MOTION FOR JUDGEMENT AS A MATTER OF
LAW
PAGE - 4

intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.*  Courts look to the longstanding *Graham* factors in conducting this balancing test to determine the objective reasonableness of the force.  These factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

D. **Defendants' Contention That the Law on Excessive Use of Force Was Not Clearly Established**

The crux of Defendants' Renewed Motion for Judgment as a Matter of Law is that the law governing the intentional quarter-second deployment of pepper spray on an unarmed, allegedly-mildly-resistant woman during her lawful arrest occurring in the context of a "chaotic and loud" protest situation has not been clearly established such that Defendant Rees reasonably could have been expected to know that his actions violated the Fourth Amendment.  (*See* Defendants' Renewed Motion, Dkt. No. 123 at 2, 7.)

The Court is well aware of the Supreme Court's holding that the constitutional "right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense." *Anderson*, 483 U.S. at 640.  *See also Brosseau v. Haugen,* 543 U.S. 194, 198 (2004) (emphasizing that the qualified immunity inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition.").  However, Defendants' insistence on the level of particularity with which the constitutional right in question must be defined is both ill-considered and is not mandated by existing precedent.

1. Defendants' insistence on the high level of particularity with which the law must be clearly established is practically problematic.  Despite the ample body of case law governing excessive use of force, and indeed, pepper spray deployment concurrent with arrest, Defendants

suggest that the law is not "clearly established" because there is no Ninth Circuit case directly governing situations in which a "weak form of pepper spray" is used for "one-fourth of one second" in a "chaotic and loud" protest scene pursuant to a "lawful arrest" in which a five-foot tall plaintiff is "flailing" while several larger officers are restraining her after flipping her headlong to the ground.  (Defendants' Renewed Motion, Dkt. No. 123.)  If so similar a precedent were required to clearly establish the law, qualified immunity would turn into absolute immunity in all but the most textbook of arrest situations.  Additionally, if the Court were to identify in excruciating detail exactly what was clearly established that officers could do for "one fourth of one second" with a can of "weak pepper spray" in the highly specific scenario detailed above, it would be superfluous for the jury to undertake their central task of applying the facts of the situation, as they find them to be, to the law given to them by the Court.  As the Supreme Court recently admonished in *Tolan v. Cotton,* "courts must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions." *Tolan v. Cotton,* 134 S. Ct. 1861, 1866 (2014) (clarifying the *Anderson*/*Brosseau* rule instructing courts to "define the 'clearly established' right at issue on the basis of the 'specific context of the case.'").  For the court to define the law with such particularity puts the cart before the horse, as it is the jury's job to determine exactly what the situation was.  And it is well-recognized Ninth Circuit procedure for the court to determine the clearly established law, and then after instructing the jury on it, to allow the jury to decide fully both the defendant's violation of it and the applicability of qualified immunity, without the Court ever ruling on that issue itself.  As our Court of Appeals held decades ago, "there is no reason to think that allowing the jury rather than the judge to determine whether an officer's conduct was reasonable under the circumstances would be inimicable to the policies that animate immunity.  On the contrary, evaluating the reasonableness of human

conduct is undeniably within the core area of jury competence." *Sloman v. Tadlock*, 21 F.3d 1462, 1468 (9th Cir. 1994).[1]

2. Nor is Defendants' insistence on a case directly on point even necessary, in fairness, to Defendant Officer Rees. The question of whether a constitutional right is clearly established is not an academic one. This second-prong of the *Saucier* test[2] should not be conducted in a way that ignores the "salient," practical purpose of the inquiry, which is to determine "whether the state of the law at the time of an incident *provided fair warning to the defendants* that their alleged conduct was unconstitutional," *Tolan*, 134 S. Ct. at 1866, such that only the incompetent or knowing violators face liability.[3] A reasonable officer in Officer Rees' position would have been on notice in 2012 that using *far more force than was necessary* to assist the other officers in arresting a prostate, unarmed woman would subject him to civil liability, whether the force deployed was in the form of pepper spray, a baton, or a kick, and whether the arrest occurred during a protest or in a dark alley at midnight.[4]

---

[1] *See also Torres,* 548 F.3d at 1211 (explaining that "sending the factual issues to the jury but reserving to the judge the ultimate 'reasonable officer' determination leads to serious logistical difficulties," and holding that it was proper for the lower court to submit the question of qualified immunity to the jury where there were disputed questions of material fact).

[2] The first prong of the *Saucier* qualified immunity inquiry asks whether there would be a constitutional violation if the facts plaintiff alleges were true. The second prong of the *Saucier* inquiry asks simply "whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

[3] *See also A.D. v. California Highway Patrol*, 712 F.3d 446, 454 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 531 (2013) ("To be clearly established, the foregoing law only must have been 'sufficiently clear that a reasonable official would understand that what he was doing violated a constitutional right.' Reasonableness is not a demanding standard. The 'state of the law' was sufficiently clear if it gave 'fair warning' to an officer that his conduct was unconstitutional.") (citing *Hope v. Pelzer,* 536 U.S. 730, 739 (2002)).

[4] *See Gravelet-Blondin v. Shelton,* 728 F.3d 1086, 1093-95 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 1292 (2014) (explaining that the dearth of on-point taser cases did not prevent a finding that the law on taser deployment was clearly established, given existing precedent on the use of other types of force in similar circumstances: "Though these cases do not concern tasers, they need not. As we explained in *Deorle*, 'it does not matter that no case of this court directly addresses the use of a particular weapon; we have held that an officer is not entitled to qualified immunity on the grounds that the law is not clearly established every time a novel method is used to inflict injury.'").

ORDER DENYING DEFENDANTS' RENEWED
MOTION FOR JUDGEMENT AS A MATTER OF
LAW
PAGE - 7

3.  Moreover, the level of specificity with which Defendants request this Court to define the clearly established law is not mandated by Supreme Court precedent. Our nation's highest court explained in *Hope* that

> [O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances. Indeed, in *Lanier*, *we expressly rejected a requirement that previous cases be "fundamentally similar."* Although earlier cases involving "fundamentally similar" facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding. The same is true of cases with "materially similar" facts. Accordingly, pursuant to *Lanier*, *the salient question that the Court of Appeals ought to have asked is whether the state of the law in 1995 gave respondents fair warning* that their alleged treatment of Hope was unconstitutional.

*Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (emphasis added).

The level of "high generality" the Supreme Court admonishes lower courts to avoid when conducting a clearly established law inquiry (*see, e.g., Brosseau*) is, conceptually speaking, a level of generality higher than that used by this Court in its examination of whether the law governing Officer Rees' actions was clearly established. As the Supreme Court explained in *Ashcroft*:

> We have repeatedly told courts – and the Ninth Circuit in particular, *see Brosseau v. Haugen,* 543 U.S. 194, 198-199, (2004) – not to define clearly established law at a high level of generality. The general proposition, for example, that *an unreasonable search or seizure violates the Fourth Amendment* is of little help in determining whether the violative nature of particular conduct is clearly established.

*Ashcroft*, 131 S. Ct. at 2084 (emphasis added). This Court has complied with these directives and conducted its clearly established law inquiry on a much more "particularized" level, looking to see whether the law governing *excessive use of force during a seizure* was clearly established. This mirrors the level of particularity of the clearly established right inquiry that is deemed acceptable in several Supreme Court opinions. For instance, in *Reichle v. Howards*, the Court, in the context of a discussion of the particularity requirements of *Brosseau* and *Anderson,* stated

that in that Section 1983 case, "the right in question is not the general right to be free from retaliation for one's speech, but the more specific right to be free from a retaliatory arrest that is otherwise supported by probable cause." 132 S. Ct. 2088, 2094 (2012).

   4. Nor does Ninth Circuit precedent require courts to determine whether use of a certain quality and quantity of force in the exact or even similar situation has been clearly established as unconstitutional. As the Court of Appeals has stated, "officials can still be on notice that their conduct violates established law even in novel factual circumstances. *We are particularly mindful of this principle in the context of Fourth Amendment cases, where the constitutional standard – reasonableness – is always a very fact-specific inquiry*." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 1292 (U.S. 2014) (internal citations omitted) (emphasis added). The Ninth Circuit has, in qualified immunity cases in which the Supreme Court has denied certiorari, held that the law on excessive use of force is clearly established given the wide acceptance of legal principles nonspecific to the exact type of force used or to the exact actions of the subject of the arrest. For instance, in *Young v. County of Los Angeles,* the Ninth Circuit discussed the clearly established law governing a similar pepper spray/unlawful seizure Section 1983 case on the conceptual level of excessive use of force and the *Graham* factors.[5] This level of particularity and articulation of the clearly established law maps well on to this Court's instructions to the jury. *See* Section II(E), *infra.*

---

[5] *See Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1167 (9th Cir. 2011) ("The legal principles that dictate our conclusion that the force involved was excessive were clearly established and indeed, long-standing, prior to 2007, the time of the use of force at issue in this case. *Graham*'s holding that the Fourth Amendment allows only such force as is objectively reasonable under the circumstances was well-established long before that time, as was the fact that objective reasonableness is determined through 'a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.' Similarly well-established were the criteria by which the government's interest in a given use of force is determined.") (citing *Graham,* 490 U.S. at 396–97).

5. Further, although it was not necessary for this Court to instruct the jury on such,[6] the Ninth Circuit has, in fact, "clearly established" with an even higher degree of specificity the rules governing the use of force in arrest situations similar to that in this case. The Ninth Circuit has "determined that the right to be free from the application of *non-trivial force* for engaging *in passive resistance*[7] was clearly established prior to 2008." *Gravelet-Blondin*, 728 F.3d at 1094. Use of pepper spray is intermediate force.[8] Further, there is clear Ninth Circuit precedent holding that intermediate force is not automatically justified merely because the arrestee's level of resistance surpasses that of strict passivity. As the Court of Appeals has found "[t]hough the individual 'was not perfectly passive,' we emphasized that his resistance was not 'particularly bellicose' and as a result concluded that the third *Graham* factor offered little support for the use of significant force against him." *Gravelet-Blondin*, 728 F.3d at 1091-92 (citing the "clearly established law" from a 2005 Ninth Circuit case, *Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005)).[9]

---

[6] *See* Sections II(D)(3) and (4), *supra.*

[7] It is important to remember that whether Plaintiff was resisting, at all, passively, or violently, is a question of historic fact that was properly put to the jury. Defendants place much emphasis on the fact that their testimony that Plaintiff was "struggling" was unrefuted and that Plaintiff "did not deny" that she was "flailing." (*See* Defendants' Renewed Motion, Dkt. No. 123 at 4.) But, juries are not required to take any statement of a witness as gospel truth – indeed one of the jury's chief tasks is to assess the credibility of the witnesses and testimony. The jury was entitled not to believe the officers' testimony regarding Plaintiff's level of resistance and the threat she posed to them, and reasonably could have done so. This is especially true in this case, where the videotape of the incident raised serious questions of the credibility of Defendants' testimony.

[8] "Both pepper spray and baton blows are forms of force capable of inflicting significant pain and causing serious injury. As such, both are regarded as 'intermediate force' that, while less severe than deadly force, nonetheless present a significant intrusion upon an individual's liberty interests." *Young,* 655 F.3d at 1161-62 (citing *Smith v. City of Hemet,* 394 F.3d 689, 701-02 (9th Cir. 2005); *United States v. Mohr,* 318 F.3d 613, 623 (4th Cir. 2003)).

[9] The Ninth Circuit has made other findings that place Defendant Rees' use of force on yet shakier ground: "Finally, as we have recognized before, the absence of a warning of the imminent use of force, when giving such a warning is plausible, weighs in favor of finding a constitutional violation." *Gravelet-Blondin*, 728 F.3d at 1092 (citing *Mattos v. Agarano*, 661 F.3d 433, 451 (9th Cir. **2011**); *Deorle v. Rutherford*, 272 F.3d 1272, 1283-84 (9th Cir. **2001**)).

ORDER DENYING DEFENDANTS' RENEWED
MOTION FOR JUDGEMENT AS A MATTER OF
LAW
PAGE - 10

### E.     This Court's Determination of the Clearly Established Right to be Free from Excessive Force During Arrest

This Court, following the procedure set by the Ninth Circuit,[10] determined that the law governing excessive use of force during an arrest was clearly established, and instructed the jury on this law so the jury could decide whether Defendants had violated it.  The Court both instructed the jury on the applicable constitutional law, as well as the qualified immunity defense standard.

First, with regard to the constitutional law, the Court properly instructed the jury on the general Fourth Amendment law,[11] use of force under the Fourth Amendment,[12] and of the standard for determining whether there has been an excessive use of force.[13]  On this latter point, the Court gave the jury considerable guidance, explicitly detailing the factors they should take into account in making a determination of reasonableness of the force deployed.  These jury instructions constitute a thorough articulation of the clearly established law on excessive force, as explained in Sections II(D)(3) and (4), *supra.*

---

[10] *See Sloman*, 21 F.3d at 1468 and analysis in Section II(D)(1), *supra.*

[11] "In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in making a lawful arrest or in defending herself.  Thus, in order to prove an unreasonable seizure in this case based on excessive force, the Plaintiff must prove by a preponderance of the evidence that the officer used excessive force during her arrest or in response to Plaintiff's actions." (Jury Instruction No. 17, Dkt. No. 114 at 20).

[12] "Under the Fourth Amendment, a police officer may only use such force as is 'objectively reasonable' under all of the circumstances.  In other words, you must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight." (Jury Instruction No. 17, Dkt. No. 114 at 20).

[13] "In determining whether the officers used excessive force in this case, consider all of the circumstances known to the officers on the scene, including: (1) The severity of the crime or other circumstances to which the officers were responding; (2) Whether Plaintiff posed an immediate threat to the safety of the officers or to others; (3) Whether Plaintiff was actively resisting arrest or attempting to evade arrest by flight; (4) The amount of time and any changing circumstances during which the officer had to determine the type and amount of force that appeared to be necessary; (5) The type and amount of force used; (6) The availability of alternative methods to take the plaintiff into custody or to subdue her." (Jury Instruction No. 17, Dkt. No. 114 at 20).  *See also* Jury Instruction No. 18, Dkt. No. 114 at 21 ("The Fourth Amendment permits police officers to use some force when performing an arrest.  On the other hand, a person has the limited right to offer reasonable resistance to an arrest that is the product of an officer's personal frolic.  That right is not triggered in the absence of probable cause, but rather by the officer's bad faith or provocative conduct.").

ORDER DENYING DEFENDANTS' RENEWED
MOTION FOR JUDGEMENT AS A MATTER OF
LAW
PAGE - 11

Significantly, Defendants did not object to the Court's formulation of the clearly established law on excessive force and on qualified immunity, despite making other jury instruction objections.[14] (*See* Trial Transcript, Day 4, Dkt. No. 121.) They did not call for this clearly established law to be presented to the jury with any higher degree of specificity. (*Id.*) They did not call for a separate instruction on Ninth Circuit precedent on the use of pepper spray. (*Id.*)

Second, with regard to the qualified immunity standard, the Court properly instructed the jury that even if Defendants had violated Plaintiff's constitutional right against unreasonable seizure, that they could not be held liable unless every reasonable officer would have known that the force used to effect the seizure was excessive and unlawful,[15] in light of the clearly established law articulated in Jury Instruction Number 17.[16]

Thus, the question for the jury with regard to Brian Rees was simply whether he had violated the clearly established law on excessive use of force, as had been given to them in Jury Instruction Number 17. The jury found that Defendant Brian Rees had violated this clearly established constitutional law on excessive use of force. The jury's decision to find liability with

---

[14] Mr. Brian Maxey, trial attorney for Defendants, objected only to Jury Instruction No. 15 (defining seizure) on grammatical grounds, Instruction No. 18 (limited right to resist arrest) on the grounds that it was unnecessary, Instruction No. 19 (malicious prosecution) on legal grounds, and Instruction No. 21, the qualified immunity instruction. Mr. Maxey's only objection to the qualified immunity instruction was that he asked that the last word in the instruction be changed from "lawful" to "unlawful," a request the Court granted. (Trial Transcript, Day 4, Dkt. No. 121 at 3-5.)

[15] Jury Instruction No. 21 reads as follows: "Defendants Fry and Rees contend that their use of force on Plaintiff was justified by their reasonable beliefs that their actions were permitted or required and, therefore, lawful. If the officers reasonably believed that the force used was lawful, and acted on the basis of that belief, then their reasonable beliefs would constitute a complete defense to the Plaintiff's claim even if, in fact, the force was not lawful. Put another way, even if you find that Defendants Fry or Rees violated Plaintiff's constitutional rights by using excessive force, Defendants cannot be liable if they reasonably believed at the time they acted that their actions were in accordance with the law. But keep in mind that this reasonableness inquiry is an objective one. The question is whether every reasonable officer under those same circumstances would believe that the use of force was unlawful." (Jury Instruction No. 21, Dkt. No. 114 at 24.)

[16] *See Sloman*, 21 F.3d at 1468 and analysis in Section II(D)(1), *supra.*

regard to Officer Rees means also that they must have found that he was not entitled to qualified immunity, *i.e.*, that every reasonable officer would have known such force would be unlawful and excessive under the standards and factors articulated in Jury Instruction Number 17.

The jury was given ample opportunity to find that Officer Rees was entitled to qualified immunity – they were instructed specifically in Jury Instruction Number 21 that if Officer Rees reasonably thought his use of force was not excessive/was lawful, then he should not be found liable even if his actions were indeed unlawful. *See* Jury Instruction No. 21. And it may well have been qualified immunity grounds on which the jury rejected Plaintiff's claims against Defendant Sonya Fry. (*See* Trial Transcript, Day 5, Dkt. No. 122 at 5.)

Thus, the question presented to the Court today is simply whether a reasonable jury could have returned this verdict. Given the universally-recognized Rule 50 procedure, we must presume, in asking this question, that the jury made findings of fact and made inferences and testimonial credibility determinations in a light and manner most favorable to Plaintiff.

On the evidence submitted at trial, a reasonable jury certainly could have concluded, given the uncontested evidence of Ms. Morales' very "petite" (the word Officer Rees himself used to describe Plaintiff, *see* Trial Transcript, Day 2, Dkt. No. 119 at 143) size and the number of officers who were already actively engaged in pinning her down behind the protective environs of a bike barricade (Trial Transcript, Day 2, Dkt. No. 119, 120-50), that even a brief burst of pepper spray to the face would have been completely excessive; *i.e., an obvious constitutional violation in the eyes of every reasonable officer*. A reasonable jury could have found Officer Rees' affirmative response to counsel's question "did you believe that there weren't enough officers present to physically arrest Maria Morales at the time that you approached her with the pepper spray?" incredible. (*See* Trial Transcript, Day 2, Dkt. No. 119 at

ORDER DENYING DEFENDANTS' RENEWED
MOTION FOR JUDGEMENT AS A MATTER OF
LAW
PAGE - 13

146.)  A reasonable jury could have even concluded that the use of pepper spray was entirely malicious and retaliatory, given the objection Ms. Morales had made to Officer Rees when he placed his hand on her person in an effort to move her, prior to the incident in which Ms. Morales fatefully touched the handle bar of Officer Fry's bicycle.  (Trial Transcript, Day 2, Dkt. No. 119 at 160-61.)

Granting a renewed motion for judgment as a matter of law and "taking the verdict away from the jury" is an extreme measure, only to be contemplated when the verdict returned by the jury so departs from the evidence as to be void of reason.  More than enough evidence was presented at trial to allow the jury to determine that Defendant Brian Rees had violated the clearly established law on excessive use of force, as provided in Jury Instruction Number 17.  Thus, the question before the Court – could a reasonable jury have found that Brian Rees violated clearly established law by using an unreasonable degree of force– requires an affirmative answer.

### 6.   CONCLUSION

For the foregoing reasons, Defendants' Renewed Motion for Judgment as a Matter of Law (Dkt. No. 123) is DENIED.

DATED this 3rd day of October 2014.

John C. Coughenour
UNITED STATES DISTRICT JUDGE