UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARIA MORALES,<br><br>                    Plaintiff,<br><br>    vs.<br><br>OFFICER SONYA FRY,<br><br>                    Defendant. | No.   C12-2235-RSL<br><br>DEFENDANT SONYA FRY'S MOTION FOR SUMMARY JUDGMENT & BRIEF<br><br>NOTING DATE: **September 28, 2018**<br><br>ORAL ARGUMENT REQUESTED |

On October 16, 2017, the Ninth Circuit Court of Appeals remanded Plaintiff Maria Morales's ("Ms. Morales") claims that Defendant Seattle Police Officer Sonya Fry ("Officer Fry"), violated the Fourth Amendment by arresting her without probable cause and using excessive force during the arrest. *Morales v. Fry*, 873 F.3d 817 (9th Cir. 2017). The Court of Appeals held that it was error to allow the jury, rather than the Court, to decide a portion of Officer Fry's qualified immunity defense, specifically, whether the rights Officer Fry allegedly violated were "clearly established." *Id.* at 819. Rather, the Ninth Circuit found that, as it concerns the qualified immunity analysis, the question of whether a particular constitutional right is "clearly established" is one that must be decided by a judge. *Id.* On remand, after reassignment from the Honorable Judge Coughenour to the Honorable Judge Lasnik, the Court ordered briefing on the issue of qualified immunity. (Dkt. #200).

DEFENDANT SONYA FRY'S MOTION FOR
SUMMARY JUDGMENT & BRIEF
*MORALES V. FRY*, No. C12-2235-RSL – Page 1

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

## I. RELIEF REQUESTED

Pursuant to Fed. R. Civ. P. 56(a), summary judgment should be granted to Officer Fry based on qualified immunity, as it was not clearly established at the time of Ms. Morales' arrest that the actions by Officer Fry violated Ms. Morales' Fourth Amendment rights.

## II. STATEMENT OF MATERIAL FACTS

### A. Events Immediately Prior to Ms. Morales' Arrest.

This case concerns the arrest of Ms. Morales, and the force used in effecting the arrest, by Officer Fry during the May 1, 2012 "May Day" protests in Seattle.[1] At the time of the arrest, Mayor Michael McGinn declared a state of emergency in the City of Seattle, recognizing that "a high degree of risk of injury to persons, including deaths, as well as damage to property which has occurred or is likely to occur." Declaration of Cherie Getchell ("Getchell Dec."), Exhibit A, Mayoral Proclamation. The property damage on May Day 2012 included car damage, incendiary devices being set off in the streets, and the smashing of windows at downtown businesses and the federal Nakamura Courthouse. Getchell Dec., Exhibit B, Independent Review of May Day 2012, at 4-15.

Ms. Morales decided to participate in the May Day march without understanding what the march was protesting. Getchell Dec., Exhibit C, Deposition of Maria Morales ("Morales Dep.") at 37:18-20; 38:17-22. Ms. Morales was aware of the property damage and injuries that were occurring and understood that the event had gotten "scary" prior to joining the march. *Id.* at 37:21-38:5. During the march, she observed a few individuals being arrested, but did not know why they were being arrested or whether they had engaged in acts of violence. Morales Dep. At 43:5-9. Ms. Morales saw "massive crowds" around each arrestee "and then this big crowd broke out right in front of the market." *Id.* at 43:11-13. The crowd started to throw "stuff," including glass bottles, which Ms. Morales could hear breaking. *Id.* at 43:17-19, 45:20-46:9. Ms. Morales couldn't see much and did not

---

[1] The first trial resolved a 42 U.S.C. § 1983 claim of excessive force against an officer who inadvertently used pepper spray when aiding in the arrest of Ms. Morales; a verdict that the Court of Appeals affirmed. *Morales*, 873 F.3d at 826-27. The jury in the first trial also rejected Ms. Morales's claims against Officer Fry under § 1983. An appeal followed, wherein the parties filed cross-appeals. However, Ms. Morales did not appeal the aspect of the verdict concerning the malicious prosecution claim against Ofc. Fry. Dkt. 110 (Special Verdict Form, Question 4).

DEFENDANT SONYA FRY'S MOTION FOR
SUMMARY JUDGMENT & BRIEF
*MORALES V. FRY*, No. C12-2235-RSL – Page 2

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

observe whether any officers were hit by the items being thrown at them. *Id.* at 45:20-46:13. She was, however, upset by the arrests, including the arrest of a Caucasian man whom she believed to be turning "all colors" while struggling with an officer. Morales Dep., at 43:17-25. At times, Ms. Morales was yelling "Asshole!" at the officers. Morales Dep., at 97:9-15.

Officer Fry was working in Acting Sergeant Michelle Gallegos' bike squad on May 1, 2012. Declaration of Michelle Gallegos ("Gallegos Dec."), at para. 8. Both Officers Fry and Gallegos perceived this scene as chaotic and dangerous. Declaration of Sonya Fry ("Fry Dec.), at para. 8; Gallegos Dec., at para. 27. Officer Fry was aware that the mayor had issued a state of emergency. Fry Dec., at para. 7. There were hundreds of protestors surrounding the officers, making it difficult for them to identify potential threats. Fry Dec., at para. 8. Officer Gallegos perceived this crowd to be growing increasingly aggressive and focused more on violence and assaults than property damage. *Id.*, at para. 6-8; Gallegos Dec, at para. 27. To safely effectuate the arrest of an individual identified as having thrown a glass bottle at police, additional bicycle officers were called in to assist. Gallegos Dec., at para. 20. Officers assigned to Sergeant Gallegos' bike squad on that day, including Officer Fry, were directed to set up a mobile fence line with their bicycles, to allow for the officers to get the arrestee safely out of the area. *Id.* Officer Fry recalls the scene at this location was chaotic and dangerous, and that the crowd was extremely loud and hostile, with many individuals screaming and threatening officers. Fry Dec., at para. 8.

**B. Arrest of Ms. Morales.**

As part of the mobile fence line, Officer Fry's bicycle was pressed against her hips with her left hand holding the frame. *Id.*, at para. 7-9. Officer Fry was directing the crowd to "move back," while also gesturing with her hands, so that the suspect could be moved out of the area without further incident. *Id.*, at para. 9. As the individuals funneled west in front of the bike line, Ms. Morales, while passing Officer Fry, said, "we're already back" and then pushed the handle on Officer Fry's bicycle in order to walk by. Morales Dep., at 44:12-21; 49:3-5. Specifically, Ms. Morales pushed the foam grip of the right handlebar of Officer Fry's bicycle as far as Ms. Morales' could reach, which was

DEFENDANT SONYA FRY'S MOTION FOR
SUMMARY JUDGMENT & BRIEF
*MORALES v. FRY*, No. C12-2235-RSL – Page 3

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

about a foot. *Id.* at 50:15-52:11; 59:7-19; 61:20-62:24. Ms. Morales testified that she was feeling upset when she pushed the handlebars. Getchell Dec., Exhibit D, Trial Testimony of Maria Morales, April 7, 2014, at 134:19-23. Ms. Morales does not know how hard she pushed the bike or whether the handlebar she pushed contacted Officer Fry. Morales Dep., at 51:11; 59:7-19; 60:2-9.

As Ms. Morales passed, and as she pushed the handlebars of Officer Fry's bicycle, Officer Fry felt an impact that she believed was a closed punch to her chest and believed Ms. Morales had said, "okay, bitch." Getchell Dec, Exhibit E, Trial Testimony of Sonya Fry, April 8, 2014, at 12:15-19; 171:9-172:3; Exhibit F, Deposition of Sonya Fry, at 92:16-18. Officer Fry testified that it was a "split second" between the moment she felt she'd been hit to when she turned her head in the direction from which the punch came. Trial Testimony of Sonya Fry, April 8, 2014, 34:14-23, 48:4-13. At that moment, Officer Fry saw Ms. Morales and believed Ms. Morales had struck her due to the proximity of Ms. Morales to Officer Fry at that precise moment. Trial Testimony of Sonya Fry, April 8, 2014, 48:12-49:16. Immediately, Officer Fry grabbed Ms. Morales, who was walking away from her, to place her under arrest for assaulting an officer, pulling her so that she fell on top of Officer Fry and her bicycle behind the fence line. *Id.* at 32:5-19; 38:7-39:7 (testifying as video is played as to hit to chest and arrest for assault).[2] Officer Gallegos and another officer then assisted Officer Fry in placing Ms. Morales into custody. Fry Dec., at para. 14. Officer Fry testified that she grabbed Ms. Morales to pull her behind the fence line because she had been trained to isolate arrestees in crowds as quickly as possible to "reduce the probability of other protestors interfering with the arrest and also trying to pull on her, which would also maybe cause more injury to her as well." Trial Testimony of Sonya Fry, at 32:20-33:4; 40:7-16. Ms. Morales denies that she said, "okay, bitch," and denies she struck Officer Fry, although she admits that she pushed the handlebars of her bicycle. Trial Testimony of

---

[2] The parties have previously utilized a portion of Exhibit A-13, a video that depicts the encounter between Ofc. Fry and Ms. Morales. Getchell Decl., Exhibit H, and Tr. 131:9-20. A DVD of the video has been prepared for the Court. Getchell Decl. at para. 9. The relevant portion of the video starts about 3 minutes and 18 seconds from the beginning, when a portion of Ms. Morales, who is wearing brown eye glasses, is initially seen in the lower left corner of the video, and Ofc. Fry is soon seen in the center of the frame motioning with her right arm and holding her bicycle with her left arm.

DEFENDANT SONYA FRY'S MOTION FOR
SUMMARY JUDGMENT & BRIEF
*MORALES V. FRY*, No. C12-2235-RSL – Page 4

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

Maria Morales, April 8, 2014, 114:17-18; 134:19-135:2; 115:15-16. Other than the force she used to pull Ms. Morales behind the fence line, Officer Fry used no other force on Ms. Morales. Trial Testimony of Sonya Fry, at 39:8-10. Ms. Morales offered no testimony or other evidence to dispute this fact. Trial Testimony of Maria Morales, at 82:12-84:6 (describing arrest and force used by non-party officers). While Ms. Morales doesn't know if the handlebars contacted Officer Fry, the video evidence and the testimony of Ms. Morales that she pushed the handlebars indicates that the right handlebar would have contacted Officer Fry in her lower abdomen. Getchell Dec., Exhibit G, Trial Testimony of William Neale, April 9, 2014, at 104:20-106:24.

### III. ISSUES PRESENTED

1) Whether the Court should grant summary judgment on Ms. Morales' false arrest claim because Officer Fry had probable cause to arrest.

2) Whether the Court should grant summary judgment on Ms. Morales' excessive force claim because Officer Fry's use of force was reasonable.

3) Whether the Court should grant Officer Fry summary judgment on qualified immunity, as it was not clearly established that her conduct would violate Ms. Morales' constitutional rights.

### IV. STANDARD

At summary judgment, Officer Fry may be denied qualified immunity only if the facts alleged, taken in the light most favorable to Ms. Morales, show that Officer Fry's conduct violated a constitutional right, and that the right at issue was clearly established at the time of the incident, such that a reasonable officer would have understood her conduct to be unlawful in this situation. *Longoria v. Pinal Cty.*, 873 F.3d 699, 704 (9th Cir. 2017) (quotation omitted). Conclusory and factually unsupported allegations are insufficient to defeat a motion for summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F 2d 912, 922 (2001), *citing Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989). Similarly, conclusory and/or speculative testimony is equally as insufficient to raise genuine issues of fact to defeat summary judgment. *Thornhill Publishing Co.,*

DEFENDANT SONYA FRY'S MOTION FOR
SUMMARY JUDGMENT & BRIEF
*MORALES V. FRY*, No. C12-2235-RSL – Page 5

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

*Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

Qualified immunity is more than a mere defense at trial; it is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The Supreme Court has stressed the importance of resolving immunity questions at the earliest possible stage of litigation, as the benefit of immunity is effectively lost if the case erroneously goes to trial. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). An "order denying qualified immunity, to the extent it turns on an issue of law, is immediately appealable." *Behrens v. Pelletier*, 516 U.S. 299, 310-11, (1996) (holding that multiple appeals of the denial of qualified immunity within the same litigation even if that results in more than one pretrial appeal, was not improper).

To evaluate qualified immunity, two questions must be resolved: (1) whether the facts, taken in the light most favorable to the non-moving party, show that the officials' conduct violated a constitutional right, and (2) whether the law at the time of the challenged conduct clearly established that the conduct was unlawful. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Ms. Morales must prove both steps of the inquiry to establish that Officer Fry is not entitled to immunity. *Marsh v. County of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Kisela v. Hughes,* 584 U.S. __, 138 S. Ct. 1148, 1152, 200 L. Ed. 2d 449 (2018). However, summary judgment on the basis of qualified immunity may be decided without analyzing the first prong if the second prong is dispositive. *Pearson,* 555 U.S. at 236-237; *Kisela,* 138 S.Ct. at 1152 *Easley v. City of Riverside*, 890 F.3d 851, 856 (2018).

## V.   ARGUMENT

**A. Officer Fry Did Not Violate Ms. Morales' Constitutional Rights.**

1. <u>Officer Fry Had Probable Cause to Arrest Ms. Morales.</u>

The Fourth Amendment protects "[t]he right of the people to be secure in their persons,

DEFENDANT SONYA FRY'S MOTION FOR
SUMMARY JUDGMENT & BRIEF
*MORALES V. FRY*, No. C12-2235-RSL – Page 6

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Arrests are "seizures" of persons and must be reasonable under the circumstances. *Payton v. New York*, 445 U.S. 573, 585 (1980). A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence. *Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001). "An arresting officer's state of mind . . . is irrelevant to the existence of probable cause" as the officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts [objectively] provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). This point is imperative in the analysis, as the Supreme Court instructs, "[i]nculsion of a subjective component . . . produces inconsistent results and defeats the purpose of the doctrine by creating a factual issue requiring resolution by a jury." *Harlow v. Fitzgerald*, 457 U.S. 800, 815-16 (1982).

To determine whether an officer had probable cause to arrest, "we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quotations omitted). Probable cause "deals with probabilities and depends on the totality of the circumstances" *Id.* at 371. It is a "fluid concept" that is "not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* "Probable cause, we have often told litigants, is not a high bar: It requires only the "kind of 'fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.' " *Kaley v. United States,* 571 U.S. 320, 338, (2014) (quoting *Florida v. Harris,* 586 U.S. 237 (2013)).

In considering the probabilities and totality of the circumstances facing Officer Fry at the time of the arrest, it is undisputed she encountered a chaotic and violent protest, and at that moment, was directing protestors away from other officers attempting to take a suspect into custody for throwing a glass bottle at police officers. *See* Fry Dec., at para. 27. Officer Fry was using her bicycle in concert

DEFENDANT SONYA FRY'S MOTION FOR
SUMMARY JUDGMENT & BRIEF
*MORALES V. FRY*, No. C12-2235-RSL – Page 7

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

with other officers to establish a mobile fence line to safely and securely effectuate this arrest. When Ms. Morales passed by, she responded to Officer Fry's statement of "move back" with "we are already back" and then pushed the handlebars of Officer Fry's bicycle, while walking past Officer Fry, alongside other officers and their respective bicycles on the mobile fence line. It is undisputed that Officer Fry believed she had probable cause to arrest Ms. Morales for assault, and Ms. Morales presents no evidence to demonstrate a genuine issue of material fact as to Officer Fry's belief of the same. Officer Fry had probable cause to arrest Ms. Morales.[3]

2. Officer Fry's Use of Force Was Reasonable.

This Court may grant summary judgment in Officer Fry's favor on Ms. Morales' excessive force claim because the force used by an officer to effectuate an arrest may still be reasonable "regardless of whether [the officer] had probable cause to [make the] arrest." *Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 921–22 (9th Cir. 2001). Police use of force violates the Fourth Amendment if it is objectively unreasonable under the circumstances. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Reasonableness is assessed by balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.*, at 396 (internal quotation marks omitted.) Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and includes "allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving." *Graham*, 490 U.S. at 396-397.

In considering a claim of excessive force, the "same standard of reasonableness at the moment applies: 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment. The calculus of reasonableness must embody

---

[3] In addition to an arrest for assault, based on the undisputed facts, Officer Fry would also have had probable cause to arrest Ms. Morales for obstruction. *See* SMC12A.16.010.A.1., "A person is guilty of obstructing a public officer if, with knowledge that the person obstructed is a public officer, he or she: 1. Intentionally and physically interferes with a public officer."

DEFENDANT SONYA FRY'S MOTION FOR
SUMMARY JUDGMENT & BRIEF
*MORALES v. FRY*, No. C12-2235-RSL – Page 8

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham,* 490 U.S. at 396 (citation omitted). "It is reasonable for police to move quickly if delay "would gravely endanger their lives or the lives of others." *Warden, Md. Penitentiary v. Hayden,* 387 U.S. 294, 298–299, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). "This is true even when, judged with the benefit of hindsight, the officers may have made "some mistakes." *Heien v. North Carolina,* 135 S.Ct. 530, 536, 190 L. Ed. 2d 475 (2014). "The Constitution is not blind to 'the fact that police officers are often forced to make split-second judgments.'" *City & Cty. of San Francisco, Calif. v. Sheehan,* 575 U.S. ___, 135 S. Ct. 1765, 1775, 191 L. Ed. 2d 856 (2015) (quoting *Plumhoff v. Rickard,* 572 U.S. ___, 134 S. Ct. 2012, 2020 (2014)).

While certain aspects of the events that led to Ms. Morales' arrest and the related use of force are disputed, the material facts of what transpired are not. Specifically, it is undisputed that Ms. Morales turned the handlebars on Officer Fry's bicycle to pass by Officer Fry during a chaotic and violent protest, and that Officer Fry reasonably believed to have been assaulted, prompting Officer Fry to act within a split second to initiate the arrest. Under the chaotic and evolving circumstances presented at the moment when Officer Fry believed to be struck, a reasonable police officer could have concluded that Ms. Morales had assaulted her, and that an arrest was warranted. Officer Fry had reason to believe in these circumstances that the hostile crowd could become emboldened to commit assaults if she did not immediately arrest Ms. Morales. Fry Dec., at para. 10. The situation that was unfolding was an exigent one, and in such situations "[o]fficers [ ] need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within that range of conduct we identify as reasonable." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) (internal punctuation and citations omitted).

Considering the totality of the circumstances, Officer Fry's split-second decision to use force to arrest Ms. Morales by pulling her over the bike line was not a violation of Ms. Morales' Fourth

DEFENDANT SONYA FRY'S MOTION FOR
SUMMARY JUDGMENT & BRIEF
*MORALES V. FRY*, No. C12-2235-RSL – Page 9

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

Amendment rights because Officer Fry had probable cause – based on objectively reasonable facts – to believe Ms. Morales had assaulted her and posed a threat if she was not arrested at that time. Thus, summary judgment should be granted on Ms. Morales' excessive force claim because the force used in this dynamic and situation was reasonable and proportionate to the situation and circumstances that confronted Officer Fry. Further, Ms. Morales has no excessive force claim to the extent she claims that the force was excessive based solely on a lack of probable cause to arrest. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1024 n.13 (9th Cir. 2015) ("Like this court, all other circuits that have addressed the question prohibit a finding of excessive force predicated *only* on the fact of an unlawful arrest.") (emphasis in original). Under those circumstances, the use of force "is not a discrete constitutional violation [as] it is dependent upon and inseparable from [an] unlawful arrest claim." *Id.* at 1025 (quoting *Bashir v. Rockdale County*, 445 F.3d 1323, 1332 (11th Cir. 2006)) (alterations in *Velazquez*).

**B. The Unlawfulness of Officer Fry's Conduct Was Not Clearly Established.**

In considering the second prong of qualified immunity, the Supreme Court repeatedly directs courts "and the Ninth Circuit in particular – not to define clearly established law at a high level of generality." *al-Kidd*, 563 U.S. at 742. The standard requires that the law be clear enough that "every reasonable official" would know he or she was violating the plaintiff's rights. *Sjurset v. Button*, 810 F.3d 609, 615 (9th Cir. 2015). (quotation omitted). A "clearly established" right must be specifically and narrowly defined based on the factual circumstances surrounding the alleged violation, as opposed to simply restating the constitutional provision guaranteeing the right. *White v. Pauly*, 580 U.S. ___, 137 S. Ct. 548, 552 (2017) (per curium). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what [the official] is doing violates that right." *al–Kidd,* 131 S.Ct. at 2083 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)) (brackets, citation, and internal quotation marks omitted); *White,* 137 S. Ct. at 552 (reversing because appeals court "failed to identify a case where an officer acting under similar circumstances as [the defendant officer] was held

DEFENDANT SONYA FRY'S MOTION FOR
SUMMARY JUDGMENT & BRIEF
*MORALES V. FRY*, No. C12-2235-RSL – Page 10

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

to have violated the Fourth Amendment"). Only in a "rare 'obvious case[,]' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances," does a right defined at a high level of generality constitute clearly established law. *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)).

Even if Officer Fry mistakenly believed she had probable cause to arrest Ms. Morales for assault and even if she used excessive force in the arrest, she is still entitled to qualified immunity. "Qualified immunity gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law" from liability under 42 U.S.C. § 1983. *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotations omitted). If this Court finds that Officer Fry's mistaken perception was *unreasonable*, the Ninth Circuit has found qualified immunity may still apply. In *Sharp v. County of Orange,* 871 F.3d 901 (9th Cir. 2017), the Ninth Circuit ruled that officers' mistaken arrest of a warrant suspect's father at the home the suspect shared with his father, was an unreasonable mistake that violated the Fourth Amendment. The Ninth Circuit considered the fact that the arresting officers had received a description of the clothing of the fleeing suspect, and the man they encountered was neither wearing similar clothing nor fleeing. However, that "unreasonable mistake" did not mean that the officers violated clearly established law warranting dismissal on the basis of qualified immunity. The court noted that the arresting officers were presented with a "dynamic and evolving" scene, in an attempt to apprehend a "fleeing suspect who was prone to act violently against law enforcement," and therefore had a need to act "quickly and decisively" that, in the circumstances presented to the officers, was more pronounced than in the cases plaintiff cited. *Id.*

1. No Controlling Authority Under These Specific Circumstances Has Been Identified.

Any alleged unreasonable mistake Officer Fry may have made in believing that she was assaulted does not make this case one of the rare "obvious" cases in which an officer's conduct is unlawful, thereby defeating qualified immunity. *Sharp*, 871 F.3d at 911. The dispositive question for this Court is "whether the violative nature of *particular* conduct is clearly established." *al–Kidd,* 131 S.Ct. at 742, 131 S.Ct. 2074. This inquiry "'must be undertaken in light of the specific

DEFENDANT SONYA FRY'S MOTION FOR
SUMMARY JUDGMENT & BRIEF
*MORALES V. FRY*, No. C12-2235-RSL – Page 11

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

context of the case, not as a broad general proposition.'" *Brosseau,* 543 U.S. at 198 (quoting *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). This specificity is particularly important in the Fourth Amendment context, where the Court recognizes,"[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine…will apply to the factual situation the officer confronts." 533 U.S., at 205, 121 S.Ct. 2151. Given the Fourth Amendment's imprecise nature, the Supreme Court instructs that officers will find it difficult to know the general standard of probable cause in "the precise situation encountered." *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1866 198 L. Ed. 2d 290 (2017). Therefore, the Court stresses the need to "identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." *White,* 137 S.Ct. at 552.

In a similar case recently decided, *Felarca v. Birgeneau*, 891 F.3d 809 (2018), the Ninth Circuit granted qualified immunity to defendant officers' who were alleged to have used excessive force in a protest setting six months prior to May 1, 2012. Specifically, the Ninth Circuit defined the law at issue as: "when, after several warnings to disperse have been given, the officer uses baton strikes on a plaintiff's torso or extremities for the purpose of moving a crowd actively obstructing the officer from carrying out lawful orders in a challenging environment. To meet their burden, plaintiffs must generally identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment." *Id.* at 822. The Ninth Circuit found the force used was not excessive.[4] *Id.* Regardless, the court found that there was no specific case on point to establish that every reasonable officer would have concluded that the force used was excessive, thus applying qualified immunity. *Id*.

There is no "settled" case law dictated by "controlling authority" that on May 1, 2012 "every reasonable official" would not have made an immediate arrest by bringing an arrestee behind a mobile fence line, given the same facts and circumstances known to Officer Fry at the

---

[4] Judge Watford, in concurring in all but section III of the court's opinion, found that the baton strikes were excessive force. Regardless, the officers were still entitled to qualified immunity because the law at the time the officers acted did not clearly establish the illegality of their conduct. *Felarca*, 891 F.3d at 823.

DEFENDANT SONYA FRY'S MOTION FOR
SUMMARY JUDGMENT & BRIEF
*MORALES V. FRY*, No. C12-2235-RSL – Page 12

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200

time. *See Hunter*, 502 U.S. at 228; *al-Kidd*, 563 U.S. at 741-742. Specifically, when, during a protest that had devolved into a "state of emergency," with violent crowds and protestors screaming at officers, Officer Fry was directed to set up a mobile fence line, to allow for officers to move an arrestee who had just thrown a glass bottle at them, out of the area, and the officer, while directing the crowd away, hears "okay, bitch," followed by an immediate assault on her body. In so defining the violation of the clearly established right as specifically as the qualified immunity analysis demands, there is no controlling authority under the precise circumstances confronted by Officer Fry to establish the violative nature of her specific conduct to every reasonable officer on May 1, 2012. Qualified immunity should be granted.

## VI.     CONCLUSION

Officer Fry respectfully requests this Court to grant summary judgment on the basis of qualified immunity, as she violated no constitutional right. Even if this Court finds a constitutional violation, any such rights in the specific circumstances of this case were not clearly established on May 1, 2012. Thus, Officer Fry is entitled to qualified immunity.

DATED this 31st day of August, 2018.

                           PETER S. HOLMES
                           Seattle City Attorney

By:   */s/ Cherie K. Getchell*
       Cherie K. Getchell, WSBA #49768
       Erika J. Evans, WSBA #51159
       Assistant City Attorneys
       Email:  Cherie.Getchell@seattle.gov
       Email:  Erika.Evans@seattle.gov
       Seattle City Attorney's Office
       701 Fifth Ave., Suite 2050
       Seattle, WA  98104-7097
       Ph: (206) 386-4084 – Cherie Getchell
       (206) 684-8221 – Erika Evans
       Fax: (206) 684-8284

       *Attorneys for Defendant Sonya Fry*

DEFENDANT SONYA FRY'S MOTION FOR
SUMMARY JUDGMENT & BRIEF
*MORALES V. FRY*, No. C12-2235-RSL – Page 13

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104
(206) 684-8200

# CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2018 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

*Attorney for Plaintiff Maria Morales:*

Darryl Parker, WSBA #30770
Civil Rights Justice Center, PLLC
2150 N 107th St, Suite 520
Seattle, WA 98133-9023

*Attorney for Plaintiff Maria Morales:*

Ada Ko Wong, WSBA #45936
AKW Law, P.C.
6100 219th Street SW, Suite 480
Mountlake Terrace, WA 98043

*/s/ Jennifer Litfin*_____
Jennifer Litfin, Legal Assistant

DEFENDANT SONYA FRY'S MOTION FOR
SUMMARY JUDGMENT & BRIEF
*MORALES V. FRY*, No. C12-2235-RSL – Page 14

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
(206) 684-8200